UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

      RICHFIELD EQUITIES, L.L.C.,                Case No. 12-33788-dof
             Debtor.                               Chapter 7 Proceeding
                                                Hon. Daniel S. Opperman

_____

SAMUEL D. SWEET,
        Plaintiff,
v.                                            Adversary Proceeding
                                            Case No. 14-3085-dof

RUMBOLD & FAMILY, L.L.C.,
        Defendant.

_____

OPINION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

On May 16, 2014, the Chapter 7 Trustee commenced this adversary proceeding by filing a three count complaint against the Defendant, seeking to avoid and recover transfers of $69,108.16 under 11 U.S.C. §§ 547 and 550 and $348,662.24 under 11 U.S.C. §§ 548 and 550. On June 27, 2014, the Defendant filed an Answer, which set forth five defenses to the Trustee's Complaint: (1) failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6); (2) the transfers were intended to be contemporaneous exchanges for new value pursuant to § 547(c)(1); (3) the transfers made to the Defendant for the payment of a debt incurred by the Debtors[1] was in the ordinary course of business pursuant to § 547(c)(2); (4) the Defendant advanced new value to the Debtors on an unsecured basis after the transfers at issue

_____

[1] The Debtors in this jointly administered bankruptcy proceeding are: Richfield Equities, L.L.C, Case No. 12-33788; Richfield Landfill, Inc., Case No. 12-33789; Richfield Management, L.L.C., Inc., Case No. 12-33790; and Waste Away Disposal, L.L.C., Case No. 12-33791.

1

pursuant to § 547(c)(4); and (5) to the extent that the Trustee argues that the transfers were fraudulent, the Debtors operated as a consolidated business and, as a result, all of the Debtors received the benefit of services provided by the Defendant and all of the Debtors paid for them.

The Trustee filed a Motion for Summary Judgment on January 22, 2015, seeking summary judgment on two of the Defendant's defenses. First, the Trustee argues that the repayment of "short terms loans" by the Debtors to the Defendant cannot constitute "value" for purposes of § 548 because the "short terms loans" were actually equity contributions. Second, the Trustee argues that Debtor Richfield Landfill's repayment of Debtor Richfield Equities' promissory note obligations to the Defendant cannot constitute "value" for purposes of § 548 because Richfield Landfill was not obligated to make the promissory note payments and received no benefit in exchange for the payments. The Defendant filed a Response to the Trustee's Motion on February 9, 2015, requesting denial of the Plaintiff's Motion and seeking summary judgment in its favor. In support, the Defendant contends that the transfers the Trustee seeks to avoid were made by the Debtors for three reasons: (1) to repay "short term loans" initially made by the Defendant to the Debtors to "make up operating cash shortfalls;" (2) to pay a promissory note Sandra Kipp assigned to the Defendant ("Note"); and (3) to pay Bernhard Rumbold a salary that was assigned to the Defendant.

<u>FACTS</u>

The Defendant owns a 33% membership interest in Richfield Equities, L.L.C. Richfield Equities, L.L.C. in turn owns 100% of Debtors Richfield Landfill, Inc., Richfield Management, L.L.C., Inc., and Waste Away Disposal, L.L.C.

On September 18, 2012, each Debtor filed a Chapter 11 bankruptcy petition. On February 25, 2013, the Court converted the Debtors' cases from Chapter 11 to Chapter 7, and Samuel D. Sweet was appointed Trustee.

The Trustee commenced this adversary proceeding on May 16, 2014, seeking to avoid and recover (i) $69,108.16[2] under 11 U.S.C. §§ 547 and 550; and (ii) $348,662.24[3] under 11 U.S.C. §§ 548 and 550. Discovery in this adversary proceeding closed on December 22, 2014.

<u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F)

---

[2] The alleged preferential transfers were listed in Exhibit A to the Complaint as follows:

| Transferor | Transfer Clear Date/Check Date | Amount | Payment Form and Number |
|---|---|---|---|
| Richfield Mgmt., L.L.C. | 9/27/2011 | $8,000.00 | Check 15685 |
| Richfield Mgmt., L.L.C. | 10/24/2011 | $8,000.00 | Check 15909 |
| Richard Landfill, L.L.C. | 10/24/2011 | $14,554.08 | Check 7862 |
| Richfield Mgmt., L.L.C. | 1/5/2012 | $8,000.00 | Check 16293 |
| Richfield Mgmt., L.L.C. | 1/20/2012 | $8,000.00 | Check 16573 |
| Richfield Mgmt., L.L.C. | 2/27/2012 | $4,000.00 | Check 16905 |
| Richfield Mgmt., L.L.C. | 3/7/2012 | $4,000.00 | Check 17125 |
| Richard Landfill, L.L.C. | 3/7/2012 | $14,554.08 | Check 8058 |

[3] The alleged fraudulent transfers were listed in Exhibit B to the Complaint as follows:

| Transferor | Transfer Clear Date/Check Date | Amount | Payment Form and Number |
|---|---|---|---|
| Richfield Mgmt., L.L.C. | 2/7/2011 | $15,000.00 | Check 13667 |
| Richfield Mgmt., L.L.C. | 4/7/2011 | $100,000.00 | Check 14348 |
| Richfield Mgmt., L.L.C. | 6/10/2011 | $150,000.00 | Check 14895 |
| Richfield Landfill, Inc. | 7/18/2011 | $14,554.08 | Check 7759 |
| Richfield Mgmt., L.L.C. | 9/27/2011 | $8,000.00 | Check 15685 |
| Richfield Mgmt., L.L.C. | 10/24/2011 | $8,000.00 | Check 15909 |
| Richard Landfill, L.L.C. | 10/24/2011 | $14,554.08 | Check 7862 |
| Richfield Mgmt., L.L.C. | 1/5/2012 | $8,000.00 | Check 16293 |
| Richfield Mgmt., L.L.C. | 1/20/2012 | $8,000.00 | Check 16573 |
| Richfield Mgmt., L.L.C. | 2/27/2012 | $4,000.00 | Check 16905 |
| Richfield Mgmt., L.L.C. | 3/7/2012 | $4,000.00 | Check 17125 |
| Richard Landfill, L.L.C. | 3/7/2012 | $14,554.08 | Check 8058 |

(proceedings to determine, avoid, or recover preferences) and (H) (proceedings to determine, avoid, or recover fraudulent conveyances).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## APPLICABLE LAW

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp. 1223, 1227 (E.D. Mich. 1991).

4

**1. Whether the "short term loans" were actually equity contributions?**

The Trustee argues that the "short term loans" extended to the Debtors by the Defendant were actually capital contributions and that therefore, no "claim" arose as a result of those loans. The Trustee cites the *Roth Steel* factors as set forth in *AutoStyle Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 749-50 (6th Cir. 2001) in support of his position that these "short term loans" were actually equity contributions, and thus cannot constitute a claim that would entitle the Defendant to a right to payment.

> The factors are: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. *Roth Steel*, 800 F.2d at 630.

*In re Autostyle Plastics, Inc.*, 269 F.3d at 749-50.

The Defendant contests some of the arguments made by the Trustee and further argues summary judgment should be granted in its favor. The Court concludes that some elements favor the Trustee, but the other elements either are in factual dispute or are in favor of the Defendant. As the Court must have a complete record on all elements, the Court denies summary judgment, but analyzes the remaining factors.

### a. The names given to the instruments.

"The absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at

750. Here, no promissory note or instrument of indebtedness evidencing the Defendant's "short term loans" and the Debtors' obligation to repay were created. This is a strong indication that the advances were equity.

While the Defendant concedes that there were no promissory notes executed between the Debtors and the Defendant, it asserts that there were contemporaneously prepared records which evidenced the Debtors' indebtedness to the Defendant. That evidence consists of the descriptions of various checks as being "repayments." The record needs more development on this element.

b. The presence or absence of fixed maturity date and schedule of payments

"The absence of a fixed maturity date and a fixed obligation to repay is an indication that the advances were capital contributions and not loans." *In re Autostyle Plastics, Inc.,* 269 F.3d at 750. Here, there was no fixed maturity date or schedule of payments. This is an indication that the advances were equity.

The Defendant asserts, however, that the Trustee's position is rebutted by the testimony of Mr. Rumbold, who stated: "From time to time, when cash flows were drawn up, it showed some repayment plan for some of the monies that were advanced under the short-term loans." Because there was a repayment schedule with respect to at least some of the short-term loans, this factor weighs in favor of the Defendant. The extent of this weight, however, is unclear and needs further development.

c. The presence or absence of a fixed rate of interest and interest payments

"The absence of a fixed rate of interest and interest payments is a strong indication that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc.,* 269

F.3d at 750. Here, there was no fixed rate of interest or interest payments. This is a strong indication that the advances were equity.

The Defendant asserts, however, that by their nature, the short-term loans extended by the Defendant to the Debtors were short in duration and any associated interest would therefore be negligible in amount. While true, this lack of a fixed rate of interest weighs in favor of the Plaintiff.

### d. The source of repayments

"If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution." *In re Autostyle Plastics, Inc.,* 269 F.3d at 751. Stated conversely, in order to constitute debt, a "reasonable expectation of repayment must exist which does not depend solely on the success of the borrower's business." *In re First NLC Fin. Servs.*, 415 B.R. 874, 881 (Bankr. S.D. Fla. 2009).

The Trustee asserts that the repayment of the "short term loans" was based on the success of the Debtors. Mr. Rumbold testified: "The expectation of repayment, obviously, is the flip side of that. When the money that it is being advanced against does come in [to the Debtors], then Rumbold and Family does get repaid." This is evidence that the advances were equity.

The Defendant asserts that it extended loans to the Debtors based on the Defendant's knowledge of the Debtors' imminent receipt of sizeable receivables associated with pre-existing contracts and not future business success. The Defendant's statements make the facts uncertain and more proofs are needed to link the note with the source of payment.

### e. The adequacy or inadequacy of capitalization

"Thin or inadequate capitalization is strong evidence that the advances are capital contributions rather than loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 751. The Sixth Circuit

has also held that a court applying this factor must analyze capitalization at the time the transfer was made and that factors such as "serious financial straits" and "negative working capital" tend to show that the transfers are equity. *Id.* When a corporation is undercapitalized, a court is more skeptical of purported loans made to it because they may in reality be infusions of capital. *Id.* at 746-47.

The Trustee asserts that the Defendant was the only lender available on short notice to make the loan and that the Debtors were insolvent and not adequately capitalized at the time the alleged short term loans were made. The Trustee additionally asserts that the Procedures and Litigation Schedule in this case states that the Defendant is "conclusively deemed" to have conceded the issue of insolvency of a Debtor if it fails to provide notice of intent to challenge this issue and file a Rebuttal Expert Report. The Defendant did not provide such a notice or file any expert report. The Trustee asserts that the Defendant cannot provide any contradictory evidence on this issue because the discovery deadline has passed and the Defendant has not presented any evidence on this issue.

The Defendant claims that it can offer evidence that the Debtors had a debt-to-equity ratio of approximately 6:1 and that they were adequately capitalized. The Defendant also argues that the testimony of Mr. Rumbold leads to a conclusion that the Debtors' business was adequately capitalized at the time the loans were made. The record is not clear as to this element to warrant granting summary judgment.

f. <u>The identity of interest between the creditor and the stockholder</u>

"If stockholders make advances in proportion to their respective stock ownership, an equity contribution is indicated." *In re Autostyle Plastics, Inc.*, 269 F.3d at 751. Advances in

proportion to stock ownership is not present here and thus this element is in favor of the Defendant.

## g. The security for advances

"The absence of a security for an advance is a strong indication that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc*., 269 F.3d at 752. Here, there was no security given for the "short term loans." This is a strong indication that the advances were actually equity.

The Defendant asserts that, because Comerica Bank had a security interest over virtually all of the Debtors' Property, the Defendant's failure to obtain security for the short-term loans is of little consequence. The Defendant also contends that the Debtors offering the Defendant security would arguably have been in violation of their loan agreement with Comerica and obtaining security for each short-term loan would have been administratively burdensome to the Defendant. The Court cannot weigh this element with this incomplete record.

## h. The corporation's ability to obtain outside financing.

"When there is no evidence of other outside financing, the fact that no reasonable creditor would have acted in the same manner is strong evidence that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 752. The Trustee asserts that outside financing was not available to the Debtors at the time of the "short term loans" and the only available funding source was the Defendant.

The Defendant asserts that there was no evidence that Comerica was unwilling to extend credit to the Debtors and that Mr. Rumbold testified that it was frequently more convenient and expedient to borrow from the Defendant than from Comerica when there was an immediate liquidity problem. Again, the record needs more development.

9

i. <u>To the extent to which advances were subordinated to claims of outside creditors</u>.

"Subordination of advances to claims of all other creditors indicates that the advances were capital contributions and not loans." *In re Autostyle Plastics, Inc.*, 269 F.3d at 752. The Trustee asserts that the Defendant entered into a subordination agreement, but this factor likely cannot be given full weight. The Trustee claims that the circumstances were as follows:

> Defendant confirmed that the subordination agreement attached as Exhibit 6c was executed by Defendant. (Exhibit 6a, p. 79). Despite Defendant's assertion to the contrary, the plain language of Exhibit 6c indicates that "any and all obligations and liabilities" of Defendant to Richfield Equities, L.L.C., whether "now existing or later arising" are subordinated in right and payment to Comerica Bank. (Exhibit 6c, ¶ 1). The complicating factor is that Defendant contends that its "short term loans" were made to Richfield Management, L.L.C., which is not the Debtor entity identified in the subordination agreement. (Exhibit 6a, pp. 48-55).

> However, Defendant also executed a Subordinated Participation Agreement. (Exhibit 6d). The Subordinated Participation Agreement provides that Defendant, among others, would purchase participations in loans made by Comerica Bank to Debtors that were subordinated to Comerica Bank. (*See generally,* Exhibit 6d). An issue of fact exists as to whether Defendant is counting certain of the subordinated participation purchases as "short terms loans." (Exhibit 6a, pp. 85-94) (inquiring about three "short term loans" that were made similar in time and dollar amount to subordinated participations disclosed by Defendant).

> Accordingly, it is clear that Defendant agreed to subordinate debt to Comerica Bank. It is not clear whether the subordination covers the purported "short term loans" or not. Therefore, this factor cannot be given full weight.

In contrast, the Defendant asserts that the short-term loans in this case were not subordinated, and, therefore, this factor weighs in favor of a finding of indebtedness rather than equity. As the record is not clear, this element cannot be determined at this stage.

j. <u>The extent to which advances were used to acquire capital assets.</u>

"Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness." *In re Autostyle Plastics, Inc.*, 269 F.3d at 752. Here, the Defendant testified that the "short term loans" were used for the

10

following purposes: employee payroll and acquisition of capital assets like recycle bins and trucks for waste hauling services. To the extent the advances were used for capital assets, this evidences that the advances were equity. Likewise, if for other uses, the advances could be loans. The parties need to develop this element.

### k. The presence or absence of a sinking fund.

"The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans." *In re Autostyle Plastics, Inc*., 269 F.3d at 753. Here, no sinking fund was established. This evidences that the advances were equity.

The Defendant asserts that, because these short-term loans were expected to be repaid quickly, there would be no purpose served by establishing a sinking fund and, therefore, this factor is irrelevant. In contrast, the Trustee argues that the short-term loans were actually equity contributions and no reasonably equivalent value was received in exchange for the transfers by the Debtors to the Defendant. The Defendant argues that the short-term loans were actual indebtedness rather than capital contributions and that the Defendant had a valid claim against the Debtors for repayment of those loans. Again, the record is unclear.

**2. Whether the note repayments were made without reasonably equivalent value being given?**

The obligor of the Note is Richfield Equities, L.L.C. Each of the Note payments was made by Richfield Landfill, Inc. to the Defendant. The Defendant's testimony establishes that the operative document is the Note executed by Richfield Equities, L.L.C. and that there are no assignment or guaranty documents that obligate Richfield Landfill, Inc. to make these payments to the Defendant. Discovery has closed and the Defendant has produced no documentation indicating that Richfield Landfill, Inc. is obligated to make the Note payments.

In assessing reasonably equivalent value, "[a] court considering [the question of 'reasonably equivalent value'] should first determine whether the debtor received any value in the exchange. If so, the court should determine if the value received was reasonably equivalent." *Franklin Advisors, LLC v. Sherwood Mgmt. Corp. (In re Whyco Finishing Tech., LLC)*, 500 B.R. 517, 531-32 (Bankr. E.D. Mich. 2013) (quoting *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. Appx. 337 (6th Cir. 2006)).

The Trustee argues that Richfield Landfill, Inc. received no value in exchange for its gratuitous payment of the Note because Richfield Landfill, Inc. was not contractually obligated to pay the Note. *See Tourtellot v. Huntington Nat'l Bank (In re Renegade Holdings, Inc.)*, 457 B.R. 441, 444 (Bankr. M.D.N.C. 2011) ("As a general rule, obligations incurred by a debtor solely for the benefit of a third party are treated as not supported by a reasonably equivalent value."). The Trustee asserts that each payment received by the Defendant related to the Note is a constructively fraudulent transfer and the Trustee is entitled to summary judgment on this defense.

The Defendant argues that the Trustee ignores the indirect benefits that the Debtor obtained in making the Note payments as they became due. The Defendant asserts that all four of the Debtors operated as a consolidated business, running a consolidated income statement, filing a consolidated tax return every year and properly recording intercompany liabilities, the returns and statements of which were kept in the name of Richfield Equities, Inc. The Defendant states that Richfield Landfill, LLC and Richfield Management, LLC, wholly owned subsidiaries of Richfield Equities, Inc., were included in these statements, returns, and reconciliations. The Defendant argues that, as a result of those consolidated operations, all of the Debtors received the benefit of the reduction of the parent company's obligations under the note.

12

The Court concludes that the summary judgment standards preclude granting relief for either party.  Genuine issues of material facts remain, so summary judgment is denied.

<u>CONCLUSION</u>

For the reasons stated in this Opinion, the Court finds that certain elements are not in issue, but sufficient genuine issues of material facts remain to preclude summary judgment.  Counsel for the Plaintiff is directed to prepare an Order consistent with this Opinion and the presentment of order rules of this Court.

.

**Signed on May 20, 2015**

                              **/s/ Daniel S. Opperman**
                              **Daniel S. Opperman**
                              **United States Bankruptcy Judge**

13